**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| SIERRA CLUB, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:19-CV-337-TLS-JEM |
| ) | |
| BP PRODUCTS NORTH AMERICA INC, ) | |
|     Defendant. ) | |

**FINDINGS, REPORT, AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on Plaintiff Sierra Club's Motion for Partial Summary Judgment [DE 18], filed on March 12, 2020. Defendant BP Products North America filed a response on May 11, 2020, and Plaintiff filed a reply on May 26, 2020.

On June 30, 2020, District Court Judge Theresa L. Springmann entered an Order [DE 50] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the motion pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    Material Facts**[1]

Plaintiff Sierra Club sued to enforce specific Clean Air Act requirements applying to Defendant BP's Whiting, Indiana oil refinery. BP's operating permit for the refinery limits the emission of "particular matter ten microns or smaller in diameter" ("$PM_{10}$") from its five boiler stacks. Among other requirements, the amount of $PM_{10}$ emitted by the boiler stacks "shall not exceed" 0.010 pounds per million British thermal units ("lb/mmBtu"). Pl. Brief Ex. 4 at 8-9 [DE 18-1] (Permit Condition D.24.4(b)(2)). Under the terms of the permit, BP must periodically perform emissions tests on its boiler stacks using EPA-approved testing methods. If "the results of a stack

---

[1] The facts herein are undisputed unless otherwise indicated.

test . . . exceed the level specified in any condition of this permit . . . [a] retest to demonstrate compliance" must be performed within 180 days of the failed test. *Id.* at 6 (Permit Condition C.19).

Sierra Club believes that BP must comply with the permit by showing that each individual stack emits $PM_{10}$ at a rate below 0.010 lb/mmBtu. BP believes that compliance is determined by multiplying the rate of emissions (in lb/mmBtu) by the "firing rate" of the five stacks over twelve months, which would produce a total emission limit of 130.18 tons per year for all five stacks combined. BP has sought a revision to the permit that would "clarify" this point, but as of the time of briefing, that revision had not been adopted. *See* Resp. at 8-9.

Between August 3, 2015 and October 9, 2018, BP performed nine tests on individual stacks using the EPA-approved methods. On each test, the stack being tested was found to produce more than 0.010 lb/mmBtu, except for one test that was inconclusive. *See* Pl. Brief at 9. In several cases, BP did not retest the stacks within 180 days. *Id*. at 10. Sierra Club, which has multiple members who live within a mile of the refinery, argues that they are injured by the allegedly improper emissions, and seeks summary judgment regarding liability for BP's failure to adequately test and control emissions for three of the stacks.

## II.     Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e)

provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

**III.   Analysis**

Sierra Club moves for partial summary judgment on BP's liability for violations alleged in Counts II and III of the Complaint, specifically that BP violated the emission limit and retesting requirements as to three of the boiler stacks: 503-01, 503-02, and 503-05. BP argues that there are genuine disputes of material fact as to whether Sierra Club has standing to challenge the emissions, and whether the test results demonstrate actionable violations of the Clean Air Act.

   A.   Standing

To establish standing, a plaintiff must show a concrete and particularized injury, a causal

4

connection to the alleged wrongful conduct, and that the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In support of its motion, Sierra Club attaches declarations of three of its members, who state that pollution from the BP refinery affects their health and the aesthetic and recreational value of the area.

BP argues that there is a factual question as to whether the injuries are traceable to the refinery, because two of the declarants mentioned pollution from other companies in the area. A plaintiff can show traceability by showing "that a defendant discharges a pollutant [that] causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 973–74 (7th Cir. 2005) (citing *Friends of the Earth, Inc. v. Gaston Copper Recy., Corp.*, 204 F.3d 149, 161 (4th Cir.2000). In its response, BP does not dispute that the emission of $PM_{10}$ at the refinery would cause or contribute to the kinds of injuries alleged. Therefore, the possibility that someone else may have contributed to the alleged harm does not defeat standing. *See also Nat. Res. Def. Council v. Illinois Power Res., LLC*, 202 F. Supp. 3d 859, 873 (C.D. Ill. 2016) ("The fact that 'third parties could also have contributed to the alleged injuries' does not mean that the injury is not fairly traceable to a defendant's conduct.") (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 520 (4th Cir. 2003)).

BP next argues that this lawsuit would not necessarily redress the alleged injury, because if its proposed revised permit is adopted, it will not have to reduce emissions regardless of the outcome of the lawsuit. Although the Indiana Department of Environmental Management is apparently considering the proposal, *see* Resp. Ex. B at 4 (incorporating BP's proposed revision in a "draft" permit), the EPA can object to any revision adopted by the IDEM, *see* 42 U.S.C. § 7661(d)(b)(1)-(3) ("Upon receipt of an objection by the Administrator under this subsection, the permitting authority

5

may not issue the permit" unless the objection is satisfied). BP presents no evidence that the EPA agrees with its interpretation, so the inference that a revised permit will be in force is "speculation or conjecture," insufficient to defeat summary judgment. *Daza v. Indiana*, 941 F.3d 303, 308 (7th Cir. 2019) (citations omitted). And even if a revised permit were in place when this lawsuit ended, harm could also be redressed by other relief, such as financial penalties. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000) (holding that civil penalties can afford redress to citizen plaintiffs by deterring defendants from committing future violations). Therefore, BP has not raised a material issue of fact as to standing.

        B.      <u>Violation of an "Emission Standard or Limitation"</u>

To prove liability in a citizen suit under the Clean Air Act, Sierra Club must demonstrate that BP has violated "an emission standard or limitation" defined by the statute. 42 U.S.C. § 7604(a)(1). Qualifying limitations include any "condition or requirement of a permit under part C of subchapter I (relating to significant deterioration of air quality)" § 7604(f)(3), or "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator." § 7604(f)(4). BP argues that only § 7604(f)(3) applies in this case; that Permit Condition D.24.4, which addresses emissions limits for the five stacks, is the applicable "condition or requirement"; that the failed tests do not demonstrate violations of Condition D.24.4; and that the rules within Condition D.24.4, including the emissions limit of 0.010 lb/mmBtu, are *not* "conditions or requirements."

BP provides little support for this strained interpretation. Condition D.24.4 itself consists entirely of sub-conditions, *see* Ex. 4 at 8-9, and a concluding statement that "[c]ompliance with the limits on annual firing rates and [emissions limits] . . . shall ensure that the net emissions increases

6

. . . remain below the significant, rendering [other statutes] not applicable." *Id.* at 9. In short, Condition D.24.4 is simply a list of rules, so the argument that Condition D.24.4 itself is a "condition or requirement" while the actual rules are not is nonsensical. The permit likewise states that "[n]oncompliance with *any provisions* of this permit is grounds for enforcement action [and] constitutes a violation of the Clean Air Act." *Id.* at 1 (emphasis added).

Even if BP were correct in its interpretation, the 0.010 lb/mmBtu limit is also actionable under § 7604(f)(4), which includes "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V." BP argues that § 7604(f)(4) cannot apply if § 7604(f)(3) applies, because § 7604(f)(4) only applies to "other standard[s]" not addressed elsewhere in the statute. The Seventh Circuit Court of Appeals has rejected this view. *See McEvoy v. IEI Barge Servs., Inc.*, 622 F.3d 671, 678-79 (7th Cir. 2010) ("The fact that the different subparagraphs of § 7604(f) may overlap to a degree is no reason to reject the natural reading of a statute. . . . This reading of [§ 7604(f)(4)] does not interfere with citizen suits based on permit terms; so long as a plaintiff has identified a standard, limitation, or schedule under any permit issued pursuant to 42 U.S.C. §§ 7661–7661f, then that route is also available."). Therefore, the emissions limit of 0.010 lb/mmBtu, Permit Condition D.24.4(b)(2), provides a basis for a citizen suit under 42 U.S.C. § 7604(a)(1).

BP argues that compliance with the emissions limit, and all rules in Condition D.24.4, is achieved by limiting total emissions of $PM_{10}$ to 130.18 tons per year for all five stacks combined. But that interpretation contradicts the plain language of the operative permit, which provides that the $PM_{10}$ emissions "measured at Stacks 503-01, 503-03, 503-03, 503-04, and 503-05 . . . shall not exceed 0.010 pounds per million BTU." Ex. 4 at 8-9 (Permit Condition D.24.4, D.24.4(b)(2)).

7

Although Condition D.24.4 does include additional limits that apply to all five stacks combined, BP provides no evidence that those limits alter or override the limit of 0.010 lb/mmBtu, other than its own proposed revision to the permit. Because BP's explanation directly contradicts the record, it does not create a genuine issue for trial. *See William Charles Constr. Co., LLC v. Teamsters Local Union 627*, 827 F.3d 672, 679 (7th Cir. 2016) (holding that when one party's account is "blatantly contradicted by the record," a court should not adopt that account in deciding a motion for summary judgment) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). For the same reason, BP's argument that it was not obligated to retest within 180 days after the failed tests – because the failed tests did not demonstrate violations of the global limit of 130.18 tons per year – does not raise a genuine issue as to its failure to conduct the retests required by Permit Condition C.19.

    C.    <u>BP's Challenge to Testing Method 202</u>

Next, BP argues that one of the methods used to test the boiler stacks is biased. BP cites EPA guidance purportedly suggesting that the prescribed testing method for condensable particulate matter, "Method 202," tends to overestimate emissions. BP ordered further testing on two of the stacks with an alternate method, and both stacks satisfied the emissions limit of 0.010 lb/mmBtu in those tests. However, the permit is clear that for purposes of compliance, all tests "shall be conducted" using Method 202. *See* Ex. 4 at 10 (Permit Condition D.24.11(b), requiring that tests be conducted in accordance with Section 326, Indiana Administrative Code 3-6)); 326 IAC 3-6-5(a)(2) (requiring Method 202 for condensable particulate matter).

Although an alternative test method can be used if it is approved for that purpose by the EPA, *see* 326 IAC 3-6-5(a)(2), BP does not argue that its alternate method has been approved by the EPA. Instead, BP seeks judicial review of the EPA's requirement of Method 202 "as applied in

8

this action." But while the Clean Air Act provides for judicial review of the EPA's emission requirements, those petitions must be filed in the appropriate U.S. Circuit Court of Appeals, *see* 42 U.S.C. § 7607(b)(1), and emission requirements "shall not be subject to judicial review in civil [ ] proceedings for enforcement," such as this action. § 7607(b)(2). A challenge to emission rules can only be made in the district court if it is a genuine challenge to an interpretation of a rule, rather than the rule itself. *Waste Mgmt. of Ill., Inc. v. U.S. E.P.A.*, 714 F. Supp. 340, 346 (N.D. Ill. 1989) ("[R]estrictions on our subject matter jurisdiction cannot be circumvented by artful pleading . . . Specifically, the court must determine whether [Waste Management] is attacking the validity of an agency regulation or, instead, is attacking a particular interpretation or application of that regulation.") (quoting *Utah Power & Light Co. v. Envtl. Protection Agency*, 553 F.2d 215, 218 (D.C. Cir.1977)).

In this case, it is apparent that the substance of BP's attack on Method 202 is based on complaints about the required test itself, not some novel application of the law at this refinery. *See* Resp. at 10-11, 20-21 (citing EPA guidance and other sources addressing the effectiveness of the test generally). That kind of challenge cannot be entertained in this Court. *See Waste Mgmt.,* 714 F. Supp. at 351 (finding that district court had no jurisdiction over lawsuit challenging EPA regulations that did not rely on "facts about the [disputed] site").

**IV.    Conclusion**

For the reasons described above, the Court hereby **RECOMMENDS** that the District Court **GRANT** Plaintiff Sierra Club's Motion for Partial Summary Judgment [DE 18] and **FIND** Defendant BP liable for the failures to comply with the $PM_{10}$ emissions limitations and requirements to retest described in Counts II and III of Plaintiff's Complaint.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served to file written objections to this Report and Recommendation with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994).

SO ORDERED this 21st day of August, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record