IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SIERRA CLUB, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 2:19-CV-337-PPS-JEM |
| BP PRODUCTS NORTH AMERICA INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Sierra Club, and Defendant, BP Products North America Inc. ("BPPNA"), filed a Joint Motion to Enter Consent Judgment. [DE 65.] The parties ask the Court to issue an order approving the consent judgment. The consent judgment will resolve alleged violations under the Clean Air Act, brought by Plaintiff, Sierra Club, who brought a citizen suit to enforce emission requirements that apply to Defendant BPPNA's Whiting, Indiana oil refinery.

I have carefully reviewed the motion to approve the consent judgment [DE 65], along with the Parties' Joint Stipulations of Settlement [DE 63]. For the reasons set forth below, I find the consent judgment, as embodied in the Parties' Joint Stipulations of Settlement [DE 63] is fair, reasonable, and consistent with the underlying statute as well as the public interest.

### Background

As alleged in the complaint, BPPNA's Whiting Refinery violated specific

conditions of its Title V operating permit under the Clean Air Act, 42 U.S.C. § 7401. [DE 1.]  The complaint alleged BPPNA repeatedly emitted particulate matter consisting of particles 10 micros or smaller in diameter ("$PM_{10}$") from five large steam-producing boilers in excess of numerous emissions limitations required under the Clean Air Act, the Indiana SIP, and the refinery's Title V operating permit, and failed to conduct required retests following stack tests that demonstrated noncompliance. [DE 1 at 2.] Members of the Sierra Club stated in their affidavits that they were injured by the $PM_{10}$ emissions and testing violations because it resulted it smells, noise, reduced bird populations and "poor air quality" attributed to the Whiting Refinery. [DE 18-1 at 70-85.] They claimed the pollution from the BPPNA refinery affected their health and the aesthetic and recreational value of the area.  *Id.*

To establish liability in a citizen suit under the Clean Air Act, Sierra Club must demonstrate that BPPNA has violated "an emission standard or limitation" defined by the statute.  42 U.S.C. § 7604(a)(1).  Qualifying limitations include any "condition or requirement of a permit under part C of subchapter I (relating to significant deterioration of air quality)" § 7604(f)(3), *or* "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator . . . ." 42 U.S.C. § 7604(f)(4).

On April 14, 2021, I issued an extensive order, granting Sierra Club's Motion for Partial Summary Judgment [DE 17] and finding BPPNA was liable for the failure to

2

comply with the $PM_{10}$ emissions limitation and requirement to retest as described in Counts II and III of Plaintiffs complaint as to three of the boiler stacks (numbers 503-01, 503-02, and 503-05).

## The Consent Judgment

The terms of the proposed consent judgment were negotiated at arms-length, over many months, with apparent substantial give-and take by experienced environmental lawyers and technical experts representing all parties.

The Joint Stipulations of Settlement were forwarded to the United States Department of Justice and the United States Environmental Protection Agency for the government's statutorily mandated 45-day review period. [DE 65-1.] The 45-day period has ended. On October 31, 2022, the DOJ provided the parties with written notification that the United States has reviewed the consent judgment and does not object to its entry by this Court. [DE 65-2.] The parties did not receive any other responses to the notice provided of the Joint Stipulations.

Pursuant to Paragraph 4 of the Joint Stipulations, within 15 days of this Court's order approving the Joint Stipulations, BPPNA will remit a total of $1 million to certain third parties to implement supplemental environmental projects agreed upon by the Parties. [DE 63 at 2-3.] This includes $500,000 provided to the Student Conservation Association to plant and care for local trees; and $500,000 to the Hammond and/or East Chicago school districts for the purchase, installation, and replacement of indoor air filtration devices in classrooms. The third parties submitted letters providing a project

3

description and detailing how their respective funds will be used, and these letters were given to the Government as part of its 45-day review. [DE 65-2 at 6-12.]

As described in Paragraphs 3 and 5 of the Joint Stipulations, BPPNA shall remit $1.75 million in civil penalties to the U.S. Treasury special fund within 15 days of receiving payment instructions from the United States and remit to Plaintiff an agreed-upon amount to cover Plaintiff's attorneys fees and costs within 15 days of this Court's order. [DE 65 at 2; DE 63 at 2, 4.]

Following confirmation of these payments, as specified in Paragraph 6 of the Joint Stipulations, Sierra Club and BPPNA in a joint motion shall seek a dismissal of the complaint with prejudice, resolving all claims in this matter. [DE 63 at 4.]

In deciding whether to approve of the consent judgment before me, I keep in mind the following standards:

> Approval of a consent decree is a judicial act committed to the sound discretion of the district court. A district court reviews a consent decree to determine whether it is fair, adequate, reasonable, and consistent with applicable law. Of particular importance in that analysis is determining whether a proposed decree adequately protects and is consistent with the public interest.
>
> In analyzing the decree before it, the Court should be aware of the policy favoring approval. Public policy strongly favors voluntary settlement of disputes without litigation. And that policy is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal agency, like the EPA, which enjoys substantial expertise in the environmental field. But that deference to the Government's judgment should by no means be a rubber stamp. Instead, the Court must conduct an individual evaluation based on the particular facts of the case but with caution not to substitute its judgment for that of the parties or

4

> engage in the type of detailed investigation that would be required if the parties were trying the case.

*United States, et al. v. U.S. Steel Corp.*, No. 2:18-cv-127, 2021 WL 3884852, at *6 (N.D. Ind. Aug. 30, 2021) (citations omitted). Additionally, courts examine whether the decree is both procedurally and substantively fair. *United States v. BP Exploration & Oil Co.*, 167 F.Supp.2d 1045, 1051 (N.D. Ind. 2001). To make this determination, I can look to factors such as "the strength of plaintiff's case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).

Here, I find the consent judgment is procedurally fair. It is the result of good faith and contested, arms-length bargaining between the Sierra Club and BPPNA over the course of a number of months, and reflects true negotiated compromises by all parties. *See U.S. Steel Corp.*, 2021 WL 3884852, at * 8. Plus the parties solicited comments and approval from the DOJ and EPA.

I also find the consent decree is substantively fair. It requires BPPNA to pay a substantial civil penalty, as well as help improve air quality in the City of East Chicago Schools and support the Student Conservation Association in its effort to plant trees in Northwest Indiana.

The consent judgment is also consistent with the goals of Clean Air Act, and it is in the public interest.

## Conclusion

For all of these reasons, I find the consent judgment, as described by the terms in the Parties' Joint Stipulations of Settlement [DE 63] is fair, reasonable, consistent with the goals of the environmental statutes, and in the public interest. The Motion to Approve Consent Judgment [DE 65] is GRANTED and the Parties' September 15, 2022 Joint Stipulations of Settlement [DE 63] is hereby ENTERED. It is further ORDERED that the Parties shall file a joint status report with the Court within 90 days from the entry of this Order, if the Parties have not filed a joint motion to dismiss by that date, as described in Paragraph 6 of the Joint Stipulations.

ENTERED: November 8, 2022.

 s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT